**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KELLEY A. MORAN,<br><br>    Plaintiff,<br><br>    v.<br><br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA and MISERICORDIA<br>UNIVERSITY,<br><br>    Defendants. | CIVIL ACTION NO. 3:CV-13-765<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

In Plaintiff's Motion for Limited Discovery (Doc. 32), I am called upon to decide whether Plaintiff is entitled to discovery beyond the administrative record.  Because the denial of benefits at issue in this case is subject to *de novo* review, Plaintiff's motion will be granted and she will be permitted to engage in discovery beyond the administrative record.

**Background**

Plaintiff, a tenured professor at Misericordia University ("Misericordia"), applied for this death benefit for her husband, Stephen Niemas ("Mr. Niemas").  The application disclosed that Mr. Niemas had "Hodgkins" which was "under care" at the time of the application.  While there was never any notice of approval or disapproval for sixteen (16) months, premiums covering Mr. Niemas were deducted from Plaintiff's pay.  Mr. Niemas died, and when Plaintiff sought the death benefit proceeds, the claim was denied by Life Insurance Company of North America ("LINA"), the provider and administrator of the Plan pursuant to which Misericordia provided life insurance benefits to eligible employees and their spouses.  In denying the claim, LINA asserted that Mr. Niemas' application was never forwarded to it by Misericordia for processing.  Rather, LINA maintains that the first time it received the application was at the time Misericordia forwarded it with proof of loss after Mr.

Niemas' death. As such, the application never went through the medical underwriting process, and Mr. Niemas never provided evidence of insurability. Misericordia, though, claims that the application was faxed to LINA. However, Misericordia failed to complete its portion of the application.

On March 15, 2013, Plaintiff filed the Amended Complaint in this action against LINA and Misericordia. Plaintiff asserts a claim against LINA for the failure, denial, and refusal to pay death benefits under an ERISA governed employee benefit plan. (*Am. Compl.*, ¶¶ 2, 4, 29-35.) Plaintiff also asserts a claim against Misericordia for "breach of contractual and fiduciary duties to properly enroll Plaintiff's deceased husband in the employer life insurance plan provided to [her]." (*Id*. at ¶¶ 3, 36-39.)

Now, Plaintiff seeks limited discovery from LINA and Misericordia. With respect to LINA, Plaintiff seeks: (1) to depose on oral examination Jared Cox ("Mr. Cox"), a LINA Life Claims Specialist, and such other corporate designee(s) with knowledge of the policies and procedures regarding the administration and/or processing of applications for voluntary life insurance benefits originating from Misericordia; and (2) to depose a corporate designee with knowledge of the method and procedure by which the application "as it related to [Plaintiff's] inclusion in the group occurred and if different from the process regarding Niemas, said designee shall speak to the policies or reasons for the disparate treatment." (Doc. 32, Proposed Order.) As to Misericordia, Plaintiff requests: (1) to depose on oral examination Cara Humphreys ("Ms. Humphreys"), Misericordia's Benefits Manager, or such other corporate designee(s) with knowledge as to the policies and procedures regarding the preparation and submission of applications for employee benefits at Misericordia; and (2) production of all documents relating to fax transmissions sent from Misericordia to LINA during June 2008. (*Id*.) LINA and Misericordia both oppose Plaintiff's request for discovery beyond the administrative record.

2

**Discussion**

Pursuant to the Employee Retirement Income Security Act ("ERISA"), a person denied benefits under an employee benefit plan may challenge that denial in federal court. *See* 29 U.S.C. § 1132(a)(1)(B). According to the Supreme Court, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). On *de novo* review, "the role of the court 'is to determine whether the administrator . . . made a correct decision.'" *Viera v. Life Ins. Co. of North America*, 642 F.3d 407, 413 (3d Cir. 2011) (quoting *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002)). Conversely, where the challenged plan grants discretionary authority to the plan administrator, the applicable standard of review is "arbitrary and capricious." *Id.*[1] When the arbitrary and capricious standard applies, a court may overturn an administrator's decision only when it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). As a result, although the scope of discovery under the Federal Rules of Civil Procedure is "any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1), "[t]he general rule in ERISA benefit determination challenges is that the court is limited to reviewing the record available to the plan administrator at the time the benefits determination was made." *Charles v. UPS Nat'l Long Term Disability Plan*, No. 12-6223, 2013 WL 6080163, at *1 (E.D. Pa. Nov. 19, 2013)

---

[1] "In the ERISA context, an 'abuse of discretion' standard of review is used interchangeably with an 'arbitrary and capricious' standard of review." *Viera*, 642 F.3d at 413 n.4.

(citations omitted).

Here, LINA asserts that "discovery is improper regardless of the standard of review" applied in this case. (Doc. 34, 3-8.) Additionally, LINA, as well as Misericordia, maintain that the denial of benefits in this action is subject to arbitrary and capricious review.

LINA's contention notwithstanding, the standard of review applied in ERISA denial of benefits cases impacts the scope of permissible discovery. As expressed recently by the United States District Court for the Western District of Pennsylvania:

> The standard of review will materially impact the scope of information that may be considered by the Court. In an abuse of discretion review, the Court is generally limited to the administrative record. By contrast, in a *de novo* review a Court has discretion to consider supplemental evidence, even if it was not presented to the administrator.

*Atkins v. UPMC Healthcare Benefits Trust*, No. 13-520, 2013 WL 6587170, at *2 (W.D. Pa. Dec. 16, 2013) (citations omitted); *see also Mullica v. Minnesota Life Ins. Co.*, No. 11-4034, 2013 WL 5429295, at *1 (E.D. Pa. Sept. 27, 2013) ("The scope of discovery in an ERISA case necessarily turns on the applicable standard of review employed by the courts.").

When the *de novo* standard of review applies, the Third Circuit has stated that a court reviewing a benefits decision can consider "any supplemental evidence" submitted by the parties. *Viera*, 642 F.3d at 418; *see also Palma v. Harleysville Life Ins. Co.*, No. 12-2337, 2013 WL 6840512, at *6 (D.N.J. Dec. 23, 2013); *Urgon v. Lincoln Nat'l Life Ins. Co.*, No. 13-4731, 2013 WL 6054809, at *3 (D.N.J. Nov. 15, 2013); *Laslavic v. Principal Life Ins. Co.*, No. 11-684, 2013 WL 254450, at *9 (W.D. Pa. Jan. 23, 2013) ("a court reviewing a benefits decision *de novo* has discretion to consider 'any supplemental evidence' presented by the parties.").

Conversely, when a benefits decision is reviewed for abuse of discretion, courts "review various procedural factors underlying the administrator's decision-making process, as well as structural concerns regarding how the particular ERISA plan was funded, to

4

determine if the conclusion was arbitrary and capricious." *Miller v. American Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (citation and alteration omitted). As such, "[t]he general rule is that a court's review is limited to the administrative record, and discovery is correspondingly limited." *Cipriani v. Liberty Life Assurance Co.,* No. 12-1335, 2014 WL 2115121, at *2 (M.D. Pa. May 21, 2014) (citing *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004)). Nevertheless, "[a]n exception to that general rule is that a court 'may consider evidence of potential biases and conflicts of interest that is not found in the administrator's record.'" *Cipriani*, 2014 WL 2115121, at *2 (quoting *Kosiba*, 384 F.3d at 67 n.5). Grounds of potential bias include circumstances of structural or procedural conflicts. *See id*. "'[S]tructural conflicts' relate to financial incentives inherent in a plan's design, such as where the same entity both funds and administers a benefits plan." *Sivalingam v. Unum Provident Corp.*, 735 F. Supp. 2d 189, 195 (E.D. Pa. 2010) (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007)); *see also Miller*, 632 F.3d at 845 ("the structural inquiry focuses on the financial incentives created by the way the plan is organized."). In comparison, the procedural inquiry "focuses on how the administrator treated the particular claimant" in order to determine "whether, in this claimant's case, the administrator has given the court reason to doubt its fiduciary neutrality." *Miller*, 632 F.3d at 845.

Because the propriety of Plaintiff's discovery requests depends upon the standard of review to be applied, resolution of Plaintiff's motion requires consideration of whether the Plan grants LINA "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115, 109 S. Ct. 948. "'Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan.'" *Viera*, 642 F.3d at 418 (quoting *Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991)). A grant of discretionary power can be express or implied and does not depend on "magic words." *Id*. But, an ambiguous plan is

to be construed in favor of the insured. *Id*. "'The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies.'" *Id*. (quoting *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999)).

In this case, Defendants assert that LINA was granted discretionary authority under the terms of the Plan based on the language in the Group Policy, (Doc. 34, Ex. A), the Employee Welfare Benefit Plan Appointment of Claim Fiduciary ("Claim Fiduciary form"), (Doc. 34, Ex. B), and the Group Life Insurance Certificate and Supplemental Information, (Doc. 33, Ex. A).

First, with respect to the Group Policy itself, LINA maintains that it was afforded discretion by its designation as the Claim Fiduciary. Specifically, LINA cites the following provision as evidence of its discretion: "[t]he Plan Administrator has appointed the Insurance Company as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims." (Doc. 34, Ex. A., 18.) Second, LINA argues that the Claim Fiduciary form is further evidence of its discretion to make benefits decisions under the terms of the Plan. That form provides, in pertinent part:

> Within the scope of this appointment, Claim Fiduciary shall be responsible for adjudicating claims for benefits under the Plan, and for deciding any appeals of adverse claim determinations. Claim Fiduciary shall have the authority, in its discretion, to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact. All decisions made by such Claim Fiduciary shall be final and binding on Participants and Beneficiaries of the Plant to the full extent permitted by law. Plan Administrator shall include the foregoing in Summary Plan Descriptions furnished to Participants. . . .

(Doc. 34, Ex. B, 1.) Third, Misericordia asserts abuse of discretion review is appropriate based on the provisions of the Group Life Insurance Certificate and Supplemental Information. (Doc. 33, Ex. A.) In particular, Misericordia notes the language providing that "[t]he Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." (Doc. 33, Ex. A, 14.) For the reasons that follow,

because Defendants fail to satisfy their burden and establish that LINA was granted discretionary authority under the terms of the Plan, the denial of benefits at issue will be reviewed *de novo* and Plaintiff's request for discovery will therefore be granted.

As mentioned, LINA first asserts that it has discretionary authority under the Group Policy because it has been appointed "as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims." (Doc. 34, Ex. A., 18.) There is authority supporting and rejecting the proposition that this language confers discretionary authority to LINA. *See, e.g, Van Anderson v. Life Ins. Co. of North America*, No. 11-050, 2012 WL 1077794, at *4 (W.D. Va. Mar. 30, 2012) (finding such language "confers discretionary authority to decide claims for benefits to LINA, as the appointed fiduciary. Plaintiff and LINA appear to agree that the abuse of discretion standard applied. . . . Accordingly, the appropriate standard of review in the present case is abuse of discretion."). *But see, e.g., Mercer v. Life Ins. Co. of North America*, No. 11-372, 2011 WL 4404053, at *4-5 (W.D. La. Aug. 30, 2011) (finding this plan language "silent regarding the discretion exercised by the plan fiduciary to make claim decisions" and rejecting "LINA's argument that because LINA is a named plan fiduciary, it, by definition, enjoys discretionary authority."). Discretionary authority, however, "is not conferred by the mere fact that a plan requires a determination of eligibility or entitlement by the plan administrator." *Elms v. Prudential Ins. Co. of America*, No. 06-5127, 2008 WL 4444269, at *13 (E.D. Pa. Oct. 2, 2008) (citing *Woods v. Prudential Ins. Co. of America*, 528 F.3d 320, 322 (4th Cir. 2008)). Restated, "almost all ERISA plans designate an administrator who, in order to carry out its duties under the plan, must determine whether a participant is eligible for benefits. Yet this authority to make determinations does not carry with it the requisite discretion under *Firestone* unless the plan so provides." *Woods*, 528 F.3d at 323 (a plan's language that "merely designates who must make benefit determinations and the timing of those

determinations" does not grant discretionary authority "because an administrator always possesses such authority (the responsibility to make eligibility determinations being inherent in the office of administrator), [which] would lead to an abuse-of-discretion review in nearly every ERISA benefits case, thereby jettisoning *Firestone*'s distinction between authority and discretionary authority."); *see also Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000) ("We hold that the mere fact that a plan requires a determination of eligibility or entitlement by the administrator . . . does not give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary.  Obviously a plan will not- could not, consistent with its fiduciary obligation to the other participants- pay benefits without first making a determination that the applicant was entitled to them."); *Elms*, 2008 WL 4444269, at *13 ("the terms of the plan must clearly set forth a subjective standard in order to warrant arbitrary and capricious review. . . .   In other words, language that merely sets forth an objective standard that an administrator must follow does not reserve discretion to the administrator.").

Here, the language in the Group Policy identified by LINA is silent regarding the discretion afforded and exercised by the plan fiduciary in making claims decisions. Moreover, the provision designating LINA as claim fiduciary "does not clearly indicate that LINA has discretion to 'interpret the rules, to implement the rules, and even to change them entirely . . . ." *Viera*, 642 F.3d at 418 (quoting *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 639 (7th Cir. 2005)). As such, LINA's designation as claim fiduciary does not establish that it was granted discretionary authority under the terms of the Group Policy. And, because LINA fails to identify any other provision in the Group Policy that confers such authority, the text of the Group Policy itself does not support a finding that the denial of benefits at issue here is subject to arbitrary and capricious review.

Second, LINA contends that its discretionary authority under the Plan is confirmed

by the Claim Fiduciary form. (Doc. 34, 3-4 ("Further evidence that the Plan vests discretion in LINA to determine eligibility for benefits under the Policy can be found in the . . . [Claim Fiduciary form].").) As stated, the Claim Fiduciary form provides, in pertinent part, that LINA has "the authority, in its discretion, to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." (Doc. 34, Ex. B, 1.) LINA also notes that the Seventh Circuit found this form to be a plan document granting LINA discretionary authority in *Raybourne v. CIGNA Life Insurance Co.*, 576 F.3d 444, 448-49 (7th Cir. 2009).

In *Raybourne*, the plaintiff-appellant argued that the claim fiduciary form was not a plan document. *See Raybourne*, 576 F.3d at 448. In particular, the appellant asserted that the form was not incorporated nor referenced anywhere in the plan, and, as such, it was insufficient to confer discretionary authority to Cigna. *See id*. The Seventh Circuit, however, noted that it had previously rejected the assumption that "only the original plan (here, the underlying insurance policy) may be considered in determining whether a plan administrator is entitled to deference. . . ." *Id*. (citations omitted). And, given that the form provided the name of the plan and plan administrator, was signed by both Cigna and the representatives of the plan, and indicated that it was effective from the date of the underlying insurance policy, the Seventh Circuit stated that it was "difficult to see how it could be anything other than a plan document." *Id*. at 449. Moreover, the Seventh Circuit noted that the "Claim Fiduciary Appointment modifies the terms of the underlying plan, and its grant of discretion to Cigna is described in the SPD furnished to L-3 employees." *Id*. Specifically, the Summary Plan Description explained that "the actual provisions of the Plan are set forth in the insurance policy and the claims fiduciary agreement between L-3 Communications and Cigna." *Id*. at 448. Thus, because the grant of discretion "described in Cigna's SPD [did] not exist in a vacuum" and the Summary Plan Description referred to the Claim Fiduciary form

and explained the discretion afforded Cigna, the Seventh Circuit concluded that the benefits determination was subject to abuse of discretion review. *Id*. at 449; *see also Siegel v. Conn. Gen. Life Ins. Co.*, 702 F.3d 1044, 1048 (8th Cir. 2013) (although policy was "silent on the question of discretionary authority," the Claim Fiduciary form amended the plan and granted LINA discretionary authority).

In contrast to *Raybourne*, however, other courts have concluded that the discretionary language in the Claim Fiduciary form fails to trigger the application of arbitrary and capricious review. *See Barbu v. Life Ins. Co. of North America*, 987 F. Supp. 2d 281, 289 (E.D.N.Y. 2013); *Francis v. Anacomp, Inc. Accidental Death & Dismemberment Plan*, No. 10-467, 2011 WL 4102143, at *4 (S.D. Cal. Sept. 14, 2011) ("the Appointment of Claim Fiduciary form is neither attached to nor endorsed on the policy. Therefore, as in *Grosz–Solomon*, because the actual policy purports to be fully integrated, and even if not fully integrated, the Appointment of Claim Fiduciary did not properly amend the policy and is not described in a summary plan document, the *de novo* standard of review shall be applied."); *Heim v. Life Ins. Co. of North America*, No. 10-1567, 2010 WL 5300537, at *2 (E.D. Pa. Dec. 22, 2010) (declining to consider the claim fiduciary form as part of the contract and reviewing the denial of benefits *de novo*).

For example, in *Barbu*, LINA asserted that its decision to deny long-term disability benefits to the plaintiff was subject to abuse of discretion review. *See Barbu*, 987 F. Supp. 2d at 283. In particular, LINA acknowledged that although the policy itself did not grant it discretion, arbitrary and capricious review was nevertheless appropriate pursuant to discretionary language set forth in the claim fiduciary form, *i.e.*, the "ACF." *See id*. As support, LINA relied on the Seventh Circuit's decision in *Raybourne*. The plaintiff, in comparison, contended that the policy was the only "plan document," and, as a result, the denial of benefits was subject to *de novo* review. *Id*. at 284. Thus, three documents were

material to determining the standard by which to review the denial of benefits at issue: the policy; the ACF; and the Group Insurance Certificate, which served as the Summary Plan Description. *See id*. at 285.

Considering the terms of those documents, Judge Bianco of the United States District Court for the Eastern District of New York concluded that LINA failed to demonstrate that it was afforded discretionary authority under the terms of the plan and that the denial of benefits to the plaintiff was subject to *de novo* review. *Id*. at 289. Significantly, Judge Bianco reasoned that the facts and documents at issue were readily distinguishable from those in *Raybourne*. Unlike the SPD in *Raybourne* in which the insurer identified a provision that the ACF contained plan terms, LINA failed to identify such a similar clause in the documents in *Barbu*. *Id*. at 287 (LINA "identified no text in any document that incorporates the ACF into the Plan to any extent."). The *Barbu* court also recognized that nearly two years after the Seventh Circuit issued its decision in *Raybourne*, the Supreme Court held that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." *CIGNA Corp. v. Amara*, - - - U.S. - - -, 131 S. Ct. 1866, 1878, 179 L. Ed. 2d 843 (2011) (emphasis in original). Judge Bianco found the Supreme Court's guidance on SPDs applicable to ACFs, and, as such, he stated that "any attempt by defendant to have this Court simply infer that the ACF is part of the Plan, even if there is no textual support for that inference in the Policy or the ACF itself, is contrary to *Amara*." *Barbu*, 987 F. Supp. 2d at 287.

Judge Bianco also noted another material difference between the policy in *Barbu* and the one in *Raybourne*. *See id*. In *Raybourne*, the Seventh Circuit made no reference to an integration clause in the applicable policy. *See id*. The policy in *Barbu*, however, contained an integration clause stating that the "entire contract" consisted of only the policy, the

11

application of the employer, and the applications of the insureds. *Id*.  Judge Bianco thus concluded that the ACF's grant of discretionary authority was not an enforceable plan term "given the integration clause in the Policy and the fact that neither the ACF nor any other document makes the ACF part of the Plan . . . ." *Id*. at 288.  As a result, LINA "failed to meet its burden to prove that arbitrary and capricious review applies because it has not shown that clear language incorporates the ACF into the Plan," and the district court concluded that the denial of long-term disability benefits would be reviewed *de novo*. *Id*. at 289.

I find Judge Bianco's reasoning in *Barbu* persuasive[2] and agree with his conclusions.[3]  First, the Supreme Court's guidance on SPDs in *Amara* also applies to Claim Fiduciary forms, and, in this case, like in *Barbu*, LINA failed to identify any provision in any document indicating that the Claim Fiduciary form is incorporated or integrated into the Plan.  Indeed, other than claiming that discretionary authority is granted to it by way of the Claim Fiduciary form, (Doc. 34, 3-4), LINA cites no textual basis in the documents at issue to support the claim that this form is part of the parties' entire agreement.  The text of the Group Policy, though, contains an integration clause supporting the contrary conclusion.  That clause provides:

> **Entire Contract**
>
> The entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds.

(Doc. 34, Ex. A., 15.)  Notably, that provision refers to the "Policy," not to the "Plan," and

---

[2]   For purposes of deciding the import of the Claim Fiduciary form on the appropriate standard to review the denial of benefits at issue, it is immaterial that *Barbu* involved long-term disability benefits and not death benefits.

[3]   Like Judge Bianco, I find *Raybourne* distinguishable from the matter *sub judice*.  In contrast to *Raybourne*, and as explained in the text, the Group Policy here contains an integration clause.  Moreover, there is no indication in any of the documents at issue that the Claim Fiduciary form was incorporated into the Plan.

"on its face it defines the 'entire contract,' not the 'entire set of plan documents.'" *Barbu*, 987 F. Supp. 2d at 287 (noting that courts in the Second Circuit and other circuits "have relied on very similar integration clauses when declining to enforce documents extrinsic to the insurance policy."). Thus, in view of the integration clause in the Group Policy and the fact that the definition of the "entire contract" does not include the Claim Fiduciary form, and further noting that LINA otherwise fails to demonstrate that the grant of discretionary authority in the Claim Fiduciary form is incorporated into the Plan, the Claim Fiduciary form's grant of discretionary authority is not enforceable and the denial of benefits at issue here is subject to arbitrary and capricious review. *See Barbu*, 987 F. Supp. 2d at 289.

The final documents Defendants reference as support for application of the arbitrary and capricious standard of review are the Group Life Insurance Certificate and Supplemental Information. (Doc. 33, Ex. A.) Specifically, Misericordia contends that these documents grant discretionary authority to LINA based on the following provision:

> The Plan Administrator has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

(Doc. 33, Ex. A, 14.) Citing this provision, Misericordia argues that "[t]he plain language of the plan documents makes clear that discretionary authority is given to LINA," (Doc. 33, 5), and "[i]t is clear that LINA had discretionary authority to determine Decedent's eligibility." (Doc. 37, 2-3.)

Because the statements in the Group Life Insurance Certificate and Supplemental Information are not Plan terms, the provision cited by Misericordia fails to effectively confer discretionary authority to LINA. ERISA requires plan administrators to furnish a "summary plan description" ("SPD") to all participants and beneficiaries. 29 U.S.C. § 1022(a). In

13

*Amara*, the Supreme Court stated that the syntax of the provision requiring certain terms be set forth in the SPD indicates that "the information about the plan provided by those disclosures is not itself *part of* the plan." *Amara*, 131 S. Ct. at 1877 (emphasis in original). The *Amara* Court also emphasized that "[t]o make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers." *Id*. at 1877-78.  Thus, the Court concluded that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." *Id*. at 1878 (emphasis in original).  Even after *Amara*, however, courts have held that the SPD may still be explicitly incorporated into the plan. *See Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("[A]n insurer is not entitled to deferential review merely because it claims the SPD is integrated into the Plan.  Rather, the insurer must demonstrate that the SPD is part of the Plan, for example, by the SPD clearly stating on its face that it is part of the Plan. A contrary decision would undermine *Amara*."); *Durham v. Prudential Ins. Co. of America*, 890 F. Supp. 2d 390, 395 (S.D.N.Y. 2012) (same); *see also Engleson v. Unum Life Ins. Co. of America*, 723 F. 3d 611, 621 (6th Cir. 2013) ("Because SPDs lack controlling effect in the face of plan language to the contrary, . . .").

Here, the documents Misericordia cites as granting discretionary authority to LINA, the Group Life Insurance Certificate and the Supplemental Information, make up "the Summary Plan Description as required by ERISA." (Doc. 33, Ex. A, 13.)  Thus, in view of *Amara*, while these documents provide communications about the Plan, their statements do not constitute the terms of the Plan.  Moreover, Misericordia has not cited any language in the Summary Plan Description (or any other document) suggesting that its terms are integrated into the Plan. In fact, the Summary Plan Description contains express language

to the contrary, as the Group Insurance Certificate states: "[t]his is not the insurance contract. It does not waive or alter the terms of the Policy. If questions arise, the Policy will govern." (Doc. 33, Ex. A.) Accordingly, because the Summary Plan Description does not contain plan terms in light of the Supreme Court's decision in *Amara* and Misericordia has otherwise failed to show that the Group Insurance Certificate and Supplemental Information are explicitly incorporated into the Plan, the documents relied on by Misericordia fail to grant discretionary authority to LINA.

In sum, the documents cited by Defendants fail to demonstrate that LINA was afforded discretionary authority to make benefits determinations under the terms of the Plan. As such, LINA and Misericordia did not meet their burden of proving that the arbitrary and capricious standard of review applies. Thus, the denial of benefits at issue in this case will be reviewed *de novo*. And, because the Third Circuit has stated that a court reviewing a benefits decision *de novo* can consider "any supplemental evidence" submitted by the parties, Plaintiff's request for discovery beyond the administrative record will be granted.

Lastly, Plaintiff's request for discovery from Misericordia is also appropriate for a reason independent of the previous discussion. In particular, Plaintiff has set forth a breach of fiduciary duty claim against Misericordia in this action. (*Am. Compl.*, ¶¶ 3, 38.) And, while it opposes Plaintiff's request for discovery beyond the administrative record, Misericordia fails to cite any authority indicating that the discovery restrictions applicable to ERISA denial of benefits claims also apply to breach of fiduciary duty claims. Courts in the Third Circuit, however, have concluded that "discovery concerning a breach of fiduciary duty claim does not fall prey to the same restrictions that govern denial of benefits allegations." *Mainieri v. Board of Trustees of Operating Engineer's Local 825 Pension Fund*, No. 07-1133, 2008 WL 4224924, at *4 (D.N.J. Sept. 10, 2008); *see also Jackson v. Rohm & Haas Co.*, No. 05-4988, 2007 WL 2916396, at *1 (E.D. Pa. Oct. 5, 2007) (noting that the rule that ERISA

cases are generally decided on the administrative record "is not applicable to (and does not limit discovery on) Jackson's two § 1132(a)(3) claims for breach of fiduciary duty."). This view is consistent with those expressed by other district courts. *See, e.g., Jones v. Allen*, No. 11-380, 2014 WL 1155347, at *8 (S.D. Ohio Mar. 21, 2014) ("In contrast with the limited discovery beyond the administrative record that may be permitted for claims reviewing a Plan Administrator's denial of a claim, the parties have not cited, and the Court is unaware of, any authority limiting discovery in ERISA breach of fiduciary duty claims to the administrative record."); *Winburn v. Progress Energy Carolinas, Inc.*, No. 11-3527, 2013 WL 3880149 (D.S.C. July 25, 2013); *Malbrough v. Kanawha Ins. Co.*, 943 F. Supp. 2d 684, 700 (W.D. La. 2013) ("Because this court has found that this case involves claims for relief under ERISA § 1132(a)(3), and that § 1132(a)(3) does not have the same stringent discovery limits as ERISA § 1132(a)(1)(B) cases, the court orders that the parties proceed with discovery."); *Jensen v. Solvay Chems., Inc.*, 520 F. Supp. 2d 1349, 1355-56 (D. Wyo. 2007) ("Case law does not constrain discovery under ERISA § 502(a)(3) actions. . . . Therefore, a finding that claims arise from ERISA § 502(a)(3) reverts discovery into the traditional realm and is governed under traditional federal, circuit, and local procedure."); *Kulkarni v. Metropolitan Life Ins. Co.*, 187 F. Supp. 2d 724, 728 (W.D. Ky. 2001) (allowing for additional discovery in ERISA breach of fiduciary duty action). Thus, discovery on Plaintiff's breach of fiduciary duty claim against Misericordia is also warranted irrespective of the standard by which the denial of benefits at issue is reviewed.[4]

---

[4] Misericordia also argues that "additional discovery is not necessary given that decedent was *per se* not insurable at the time Plaintiff submitted the application." (Doc. 37, 8-11 (citing *Everett v. United of Omaha Life Ins. Co.*, No. 11-926, 2013 WL 5570222 (M.D. Pa. Oct. 9, 2013).) Because this argument implicates the merits of Plaintiff's claim and not the discovery dispute at issue, it will not be addressed at this time.

## Conclusion

For the above stated reasons, Plaintiff's discovery motion will be granted.

An appropriate order follows.


August 27, 2014                                         /s/ A. Richard Caputo
Date                                                    A. Richard Caputo
                                                        United States District Judge